IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 3, 2024 Session

## ANGELA WENTWORTH v. ROBERT TURNER ET AL.

**Appeal from the Chancery Court for Fentress County**
**No. 21-15    Elizabeth C. Asbury, Chancellor**

_____

### No. M2023-00898-COA-R3-CV

_____

After discovering that her neighbors had built a home on rural property that she owned, the property owner brought an ejectment action to remove them. The neighbors asserted an affirmative defense based upon Tennessee Code Annotated section 28-2-103, which protects against ejectment if the defendant can show adverse possession for seven years. Following a trial, the trial court found that the neighbors had proven adverse possession and set a boundary line of the possessed area, drawing upon an exhibit produced by a surveyor. The property owner asserts that the boundary determined by the trial court was too expansive and unsupported by clear and convincing evidence. The neighbors assert that the trial court drew the boundary line in a manner too restrictive, failing to encapsulate the entirety of the area they actually possessed. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Michael Savage, Livingston, Tennessee, for the appellant, Angela Wentworth.

C. Douglas Fields, Crossville, Tennessee, for the appellees, Robert Turner and Jackie Turner.

### OPINION

#### I.

In 1997, Angela Wentworth purchased a 30-acre unimproved parcel in Fentress County. Ms. Wentworth bought the Fentress County land through an auction in 1997 as

an investment to benefit her children in the future. She intended to let the timber grow and let her children eventually decide whether they wanted to cut and sell the timber or build homes there. From 1997 to 2000, she periodically walked the front part of the property but did not venture deep into the parcel, because the vegetation was thick and full of ticks and snakes. From 2000 to 2010, she walked the property or drove by it approximately once per year. Given the denseness of the vegetation, she could not see far into her property. In 2009, she moved away from Fentress County, so, thereafter, she visited the property only occasionally.

In 2000, three years after Ms. Wentworth purchased her Fentress County property, Robert and Jackie Turner bought an adjoining 48-acre unimproved parcel. After the Turners purchased their lot on Tiffany Lane in 2000, a realtor showed them where the property lines were. This helped the Turners decide where to build. One of the first things that the Turners did was add a wire fence around the border of what they thought was their property to warn hunters not to enter. Approximately every 50 feet, they hung a "no trespassing" sign. Over the years, parts of the wire fence would fall after storms, so they would regularly have to walk the wire fence and fix the broken sections. At various points, Mr. Turner turned hunters away, had a deer stand removed, and stopped people from riding recreational vehicles through the property. After putting up the wire fence, the Turners improved upon an existing dirt road by adding gravel. Trees were cut down on either side of the driveway. Then, in 2001, they built a cabin with their sons' help. They stayed there on weekends for the next several years. The cabin had a mailbox and street address. The Turners also built a pond near the house. Mr. Turner would mow the grass approximately 100 feet surrounding the pond. In 2007, the Turners built a house and began living there full-time. A well was added and a septic tank. Various service and delivery vehicles would regularly use the driveway to access the house. This included delivery trucks from UPS, FedEx, and the USPS, as well as the gas company. The Turners also added a chicken coop, wood duck boxes, and left feed for the deer so as to be able to enjoy watching them. The Turners took firewood and removed dead trees. All of the area in which this activity was occurring, except for a short section of the driveway, was, however, on Ms. Wentworth's property. The Turners paid taxes every year on the property, though the tax increased substantially in 2017 after the city reassessed the property. Mr. Turner did not know for sure if the couple paid taxes on the improvements they had built before 2017, but their taxes continually increased over time, so he assumed that meant the increases were covering the additional improvements. After the 2017 reassessment, the county specifically listed the improvements on his property tax sheet, indicating that at the time the city also understood the house to be located on the Turners' parcel.

The Turners insist they did not know that the property on which they were engaging in all of these actions was owned not by them but instead by Ms. Wentworth. Neither the Turners nor Ms. Wentworth learned this until 2021 when her son Brandon Wentworth first noticed the Turners' house while walking the property. On January 3, 2021, Mr. Wentworth went to his mother's property in an effort to find a good location to build a

home for his family. Upon walking deep into the property, he came across a string line with sticky notes attached to it. He followed the line deeper into the property, eventually seeing a house through the woods on the other side of the line. After confirming through the county tax records and an aerial photo that a house was on his mother's property, he texted her to inform her of the issue. After an aerial photo from the property assessor's office confirmed that a house was built in the back corner, Ms. Wentworth contacted Mr. Rodney Foy, who had completed the original property survey before the 1997 auction. Mr. Foy confirmed that the house was on her lot, and she hired a lawyer and visited the property herself. When she walked to the back corner of the parcel, she saw a stake in the ground with a string tied to it that ran inside the border of her land. She said that, along the pathway of the string, there were homemade "no trespassing" signs, most on the ground, but a few were stapled to trees.

Ms. Wentworth filed suit against the Turners in February 2022. She primarily sought a declaratory judgment establishing the boundaries of the property and to eject the Turners from her property. The Turners raised the affirmative defense found in Tennessee Code Annotated section 28-2-103, which provides a seven-year statute of limitations on ejectment claims when adverse possession is shown. The case proceeded to a bench trial, where the court heard testimony from the parties and from several other witnesses.

In addition to the above addressed, the court also heard testimony from neighbors and others in the area who knew of the Turners' home. Michael Wade Suttle, a former neighbor, testified that he lived on a parcel next to Ms. Wentworth's property and knew of the Turners' house and pond. He did not know that the Turners had built the house on Ms. Wentworth's parcel. When he lived there, he saw the wire fence and no trespassing signs. Around 2008, he sold his property to Darrell Crouch. Mr. Crouch testified that he has lived there since then. He testified that he knew the Turners and was aware that they had lived there since before he moved in. He knew of their wire fence, as he had seen it from the road. Mr. Crouch testified that he had been invited up to the Turners' house and was unaware that it was sitting on Ms. Wentworth's property. He said the Turners controlled who could access the property and treated it as their own.

Mark Copeland testified that he lived nearby and had hunted in the area his whole life. He knew of the Turners' home and knew they had lived there for approximately 17 years. He also knew about the signs on the property warning against trespassing and hunting. Rick Pedigo of the Fentress County Sheriff's Department testified that he patrolled that area and had known the Turners for about five or six years. After bad storms, he would often drive out to their home to make sure they were all right.

The trial court also heard testimony from the Turners' sons, William and Joel. Both helped their parents build the cabin in the first few years. They remembered that their parents would stay there on weekends for the next several years. William remembered his parents building the pond around that time. The wire fence was already there the first time

either visited the property, but they helped repair it several times after storms knocked it down. William stated that the wire ran from a metal fence post on Tiffany Road and ended on another similar fence post, stapled to trees along the way. Joel stated that his parents used the entire property, even the wooded areas. In the early days, his father would hunt some on the property but had stopped doing that over time.

The court also heard testimony from Tony Hughes, a surveyor hired by the Turners. He testified about Exhibit 13, a survey map he created after visiting the property. Exhibit 13 shows the relevant portion of the two adjoining parcels; the driveway, which starts on the Turners' lot and cuts into Ms. Wentworth's lot; and the improvements the Turners added, including the house and pond. Surrounding these is a borderline titled the "Area of Encroachment."



*Exhibit 13*

To create the Area of Encroachment, Mr. Hughes stated that he followed the wire fence while he could, but where it had fallen, he was partially able to determine where the signs had been stapled to trees, indicating where the fence had been. When asked about the area surrounding the driveway, he indicated that, from his inspection, it was mostly woods. He stated that utility lines were placed approximately 10 to 15 feet off the west side of the driveway. He described the area surrounding the pond and house as cleared and mowed, indicating it was regularly used.

When questioned as to the specific Area of Encroachment boundary he drew, he indicated that it was based on those parts of the area that had been disturbed or upgraded. When pushed on why the Area of Encroachment included land beyond what was upgraded, including area beyond the 10 to 15 feet off the driveway, he did not provide a clear answer. He described the way he drew the lines as "a line of symmetry" compared to the shape of the surrounding lots, rather than a line indicating where he directly perceived actual use. This line of questioning on cross-examination included the following exchange:

> Q.     So really just the cleared area around the home, a little area behind the pond, and about fifteen feet on one side of the driveway is all you can tell that had really been use or encroached upon. Correct?
>
> A.     As far as what had been improved, yes.

Ms. Wentworth's lawyer asked Mr. Hughes to draw with a highlighter on Exhibit 13 the area he actually observed as being used and encroached upon by the Turners. From his memory, he highlighted an area somewhat smaller than the Area of Encroachment boundary he had provided in the survey. He described the highlighted area as being approximately four acres. This highlighted version of the survey map was introduced as Exhibit 15.



*Exhibit 15*

The surveyor Mr. Hughes had also been tasked with providing a rendering of the location of the wire fence, but the endeavor had not been fully completed. Mr. Hughes had run into difficulties in completing this endeavor given the busyness of his schedule and removal of portions of the wire fence. To the extent that Mr. Hughes was able to provide any additional mapping in relation to this endeavor, this exhibit was not provided through discovery and only provided to opposing counsel on the morning of trial. The exhibit was marked for purposes of identification but was never moved into evidence and testimony was not further developed as to the location of the wire fence.

The Turners testified that their usage of the property extended beyond the area highlighted on Exhibit 13 by Mr. Hughes. Mr. Turner indicated that he had utilized a more extensive area and evidently the wire fenced area was even larger. Mr. Turner indicated usage occurred in an area identified by lines drawn on Exhibit 11, which is marked aerial image of the property.



*Exhibit 11*

After hearing the testimony, on July 1, 2022, the trial court entered an order accompanied by detailed findings of fact and conclusions of law. The trial court analyzed whether the Turners had successfully proven the elements of adverse possession[1] as required by the affirmative defense found in Tennessee Code Annotated section 28-2-103. The trial court found that, factually, there was no dispute that the Turners had used and occupied some portion of Ms. Wentworth's property for the statutory period of seven years. *See* Tenn. Code Ann. § 28-2-103. As for the other elements, the trial court indicated that Ms. Wentworth only disputed the open and notorious element. Because the trial court had found that the Turners used the property as their own in a way that led others to believe it was theirs, through improvement and use, the trial court determined that this element was met. Therefore, the trial court concluded that the Turners had proven that they adversely possessed a portion of Ms. Wentworth's property, satisfying Tennessee Code Annotated section 28-2-103. The trial court then clarified that the area highlighted by the surveyor in Exhibit 15, rather than the more expansive area identified in Exhibit 13, was the portion adversely possessed by the Turners. The trial court ordered a survey to be performed to define the area in Exhibit 15 and denied Ms. Wentworth's claims for ejectment and money damages.

On August 24, 2022, the Turners filed a motion to alter or amend. In it, they argued that the area defined by Mr. Hughes when he highlighted Exhibit 15 was, at best, a guess made in court based purely on what he could recall from his visit to the property of the upgrading uses. They requested that the court allow Mr. Hughes to go outside of the highlighted portion in creating the court-ordered survey defining the adversely possessed area, since his drawing from memory may not be accurate. They also asked the court to set the boundary at the wire fence, which is evidently a larger area than either Exhibit 13 or Exhibit 15. In response, Ms. Wentworth argued that Exhibit 15 best reflected the proof shown at trial about actual use. After a hearing in March 2023, the court entered a final order granting the motion to alter or amend. In doing so, the trial court determined that the "Area of Encroachment" as defined by Mr. Hughes in his original survey, entered as Exhibit 13, best reflected the adversely possessed area. Therefore, the trial court amended its prior order to define the adversely possessed area as that found in Exhibit 13.

Ms. Wentworth appealed. On appeal, she argues that the trial court erred in finding that the Turners proved the extent of their actual possession by clear and convincing evidence whether as defined by boundaries in Exhibit 13 or Exhibit 15. The Turners filed a cross-appeal, arguing that the trial court erred in limiting the area found to be adversely possessed to the area identified in Exhibit 13 and instead should have placed the boundary at the wire fence.

---

[1] "Generally, acquisition by adverse possession for the requisite period of time, whether statutory or under common law, must be (a) actual and exclusive; (b) open, visible, and notorious; (c) continuous and peaceable; and (d) hostile and adverse." *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 376 (Tenn. 2007) (citing Ralph E. Boyer, *Survey of the Law of Property* 233, 236 (3d ed.1981)).

II.

"Adverse possession ordinarily is a question of fact. The burden of proof falls on the individual claiming ownership by adverse possession to establish the elements by clear and convincing evidence." *Mathes v. 99 Hermitage, LLC*, 696 S.W.3d 542, 552 (Tenn. 2024) (citations omitted).[2] Tennessee appellate courts "review the trial court's findings of fact after a bench trial 'de novo upon the record with a presumption of correctness, "unless the preponderance of the evidence is otherwise."'" *Id*. (quoting *Regions Bank v. Thomas*, 532 S.W.3d 330, 336 (Tenn. 2017) (quoting Tenn. R. App. P. 13(d))). Evidence meets the clear and convincing standard when "there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Charles v. McQueen*, 693 S.W.3d 262, 281 (Tenn. 2024) (quoting *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 128 (Tenn. 2013)). To be clear and convincing, the evidence "must produce a firm belief or conviction in the fact finder's mind about the truth of the facts to be established." *In re Markus E.*, 671 S.W.3d 437, 457 (Tenn. 2023). The Tennessee Supreme Court has described the "procedure we apply to other factual findings that require clear and convincing evidence" as follows: "The reviewing court presumes the trial court's underlying factual findings are correct (unless the evidence preponderates against them), and then determines *de novo* whether these facts establish [what must be proven] by clear and convincing evidence." *Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 515 n. 69 (Tenn. 2013).[3]

III.

In the present case, the trial court found that there was no dispute that the Turners had utilized and occupied at least some portion of Ms. Wentworth's property for seven

---

[2] There are questions that arise in the context of adverse possession that present questions of law building upon factual determinations. For example, the *Mathes* Court indicated that "whether certain facts may establish the adversity element of adverse possession—is a question of law that we review de novo." *Mathes*, 696 S.W.3d at 552.

[3] *Cf.*, *e.g.*, *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (noting that "[w]hether evidence is clear and convincing is a question of law that courts review de novo without a presumption of correctness"); *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 410 (Tenn. 2013) (stating that "[a]lthough we presume that the trial court's findings of fact are correct, unless the evidence preponderates otherwise, . . . whether the facts establish clear and convincing evidence to overcome the statutory presumption of accuracy of an MIR report is a question of law that we must review de novo with no presumption of correctness"); *Hyatt v. Adenus Grp., LLC*, 656 S.W.3d 349, 370 (Tenn. Ct. App. 2022) ("Because mutual mistake justifying reformation must be proven by clear and convincing evidence, the typical Rule 13(d) standard of review is somewhat altered. In this situation, we 'presume[ ] the trial court's underlying factual findings are correct (unless the evidence preponderates against them), and then determine[] de novo whether these facts establish [the claim] by clear and convincing evidence.'" (quoting *Reid ex rel. Martiniano*, 396 S.W.3d at 515)).

- 10 -

years. Further, because of the Turners' long-term use of the property, holding it out as their own to the extent that others knew it to be their property, the trial court held that the Turners' use was open and notorious. Because the trial court found that the Turners had proven adverse possession by clear and convincing evidence, the trial court moved to the question of exactly what area was "actually possessed" by the Turners. In the original final order, the trial court stated the following:

> According to the Defendants' surveyor, 5.25 acres of Plaintiff's land has been enclosed by Defendants (see Exhibit 13). The surveyor described an area of approximately 4 acres actually used by Defendants. That area is marked with a yellow marker on Exhibit 15. It is the opinion of this Court that Defendants adversely possessed approximately 4 acres of Plaintiff's property as set forth on the survey designated as Exhibit 15.

After a hearing on the Turners' motion to alter or amend, the trial court expanded the area it defined as "actually possessed" to include the entire Area of Encroachment on Exhibit 13, rather than limiting the actually possessed area to the highlighted portion on Exhibit 15.

On appeal, both parties argue in opposition to the boundary line found by the trial court.[4] Ms. Wentworth argues the line, whether the yellow highlighted area of Exhibit 15, the trial court's original finding, or Exhibit 13, the area of encroachment that was ultimately found by the trial court to be the area actually possessed following the hearing upon the motion to alter or amend, is errant and unsupported. She insists that the area recognized by the trial court encompasses land that was not actually possessed by the Turners and that actual possession to the extent of reaching these boundaries was not established by clear and convincing evidence. The Turners argue that the trial court's ruling adopting the Exhibit 13 area of encroachment boundary lines in its final order did not properly recognize the full scope of the area that they actually possessed. The Turners assert they actually possessed the property to the wire fence, which they assert is a larger area than the area recognized as actually possessed by the trial court. The Turners do not state with specificity what the contours of the fenced area are or point to evidence establishing what they are.

Though they reach different conclusions, both parties agree that this case centers upon whether the boundary found by the trial court reflects the Turners' "actual possession." The centrality of actual possession stems from Tennessee Code Annotated section 28-2-103, which provides:

---

[4] To the extent that Ms. Wentworth has attempted to raise an issue with regard to any of the elements of adverse possession beyond the area "actually possessed," we find any argument to be skeletal. Therefore, we find any attack on the underlying elements of adverse possession to be waived. *See Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010).

(a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.

(b) No possession of lands, tenements or hereditaments shall be deemed to extend beyond *the actual possession of an adverse holder* until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located.

Tenn. Code Ann. § 28-2-103 (emphasis added).

A defendant can utilize this statute as a defense to an ejectment action if the defendant can prove the elements of adverse possession by clear and convincing evidence. *Hartman v. Massengill*, No. E2022-01769-COA-R3-CV, 2023 WL 5965433, at *2 (Tenn. Ct. App. Sept. 14, 2023) (citing *Wilson v. Price*, 195 S.W.3d 661, 666-67 (Tenn. Ct. App. 2005)). To succeed, "the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time." *Cumulus Broad., Inc.*, 226 S.W.3d at 377 (citing *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n.2 (Tenn. 1983)). This statute "protects an adverse holder after a period of seven years but only as to that portion of the land in his actual possession." *Id.* at 376 (citing *Shearer v. Vandergriff*, 661 S.W.2d 680, 682 (Tenn. 1983)). Accordingly, this statutory protection extends only to what is proven as "actual possession." Tenn. Code Ann. § 28-2-103(b); *Cumulus Broad., Inc.*, 226 S.W.3d at 376.

In the present case, the Turners' contention that the trial court erred by failing to award them the entirety area within the bounds of their wire fence, which they contend is the area they actually possessed, is unavailing. Assuming for purposes of argument that the wire fence was a sufficient basis to find actual possession, the Turners, nevertheless, failed to meet their burden to prove where their fence was located. The Turners suggest their surveyor was busy and could not timely complete a survey reflecting the location of the fence, and they complain that Ms. Wentworth removed their wire fence. They failed, however, to take any appropriate action before the trial court to address such complications and ensure that trial court was apprised of the location of the wire fence. Insofar as this deficiency could have potentially been addressed in whole or part through Exhibit 14, which was marked only for purposes of identification, the Turners have failed to present any argument on appeal that the trial court erred by excluding this late provided survey map. Nor did they develop oral testimony that clearly indicated the contours of the location of the wire fence.

Regarding Ms. Wentworth's contention that the trial court erred by recognizing too large of an area as having been actually possessed in the absence of clear and convincing evidence to support such a determination, we similarly find her contention unavailing. The

- 12 -

furthest reach of Ms. Wentworth's argument is an assertion that the Turners failed to establish that any area of her property was actually possessed by the Turners. The record plainly contradicts this contention. The Turners constructed a cabin and then a house. They created a gravel drive to their home. They ran an electrical system. They built a pond and erected a chicken coop. They added a septic system. They placed wooden duck boxes. They cleared dead trees and brush. They mowed the grass. The physical evidence of their actions was so apparent as to be sufficient that the surveyor, Mr. Hughes, found approximately 4 acres to show actual visible signs of upgrading of the property through changes made by the Turners as reflected in the area marked on Exhibit 15. The Turners, however, testified regarding uses that went beyond the areas identified by Mr. Hughes. For example, Mr. Turner's testimony including, but not limited to, his testimony in relation to Exhibit 11 reflects usage of a more expansive area than the area marked by Mr. Hughes on Exhibit 15. Testimony from members of the Turner family supports the trial court's conclusion that Mr. and Mrs. Turner actually used the more expansive area reflected in Exhibit 13.

Further undermining the parties' dueling contentions of error by the trial court, we also note that our review in this case is hampered by the parties' deficiencies in ensuring that the record on appeal would allow for this court to meaningful review the determinations of the trial court. The trial court ultimately determined the area marked in Exhibit 13, the encroachment area, reflected what was actually possessed by Turners. During the course of the trial, from our review of the transcript, it is apparent that witnesses repeatedly pointed or gestured in some manner toward some part of an exhibit in explaining where certain uses occurred on the property. In general, the parties did not enter into evidence marked exhibits reflecting this testimony or verbally clarify with the witness through their testimony where on the exhibit they were referencing in a manner that would allow for review by this court. "The party raising an issue on appeal is obligated to give the appellate court a record that is sufficient for an appropriate review of the issue raised." *Williams v. Williams*, 286 S.W.3d 290, 297 (Tenn. Ct. App. 2008); *see also Word v. Word*, 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996) ("A party raising issues on appeal is responsible for furnishing the appellate court with a record that will enable that court to reach the issues raised.").

The Ohio Court of Appeals confronting a similar challenge explained well the challenges and limitations of appellate review in such circumstances, explaining as follows:

> [T]here were several other points at which witnesses gave testimony that is not adequately reflected on the record. Several times, while witnesses testified about some of the pictures that were admitted into evidence, they were apparently pointing to the pictures, but the record does not reflect the content of their nonverbal testimony.

- 13 -

For example, when testifying about one of the pictures of the area, a witness made reference to "this area here" and explained that the water flowed "this way and this way." The witness made no verbal references to identifiable points on the pictures, nor were any notations made on the picture to preserve this testimony on the record. A reviewing court cannot discern what "this area here" is, nor can it decipher the meaning of "this way and this way." The impact on the trier of fact of all the nonverbal testimony cannot be reviewed because the gestures were not reflected on the record. See, e.g., *State v. Wilson* (1972), 30 Ohio St.2d 312, 314 (noting that the impact on the trier of fact of nonverbal gestures "should have been described in detail to the record" if the appellant intended to challenge them on appeal); *Drummond v. Bond* (Aug. 1, 1978), 3d Dist. No. 5-78-12 (noting that use of demonstrative gestures that are not reflected in the printed record are meaningless and their impact on the outcome of the case is impossible to review).

Because the township failed to ensure that the meaning of all the nonverbal testimony was reflected on the record, the record is so incomplete that it is meaningless to a reviewing court.

*Sturgis v. E. Union Twp.*, 2006-Ohio-4309, 2006 WL 2389589 at *4-5 (Ohio Ct. App. Aug. 26, 2006).

In the present case, the central issue on appeal is identifying where the Turners' uses of the property occurred. Insofar as the testimony included multiple references to locations on exhibits without identifying where on those exhibits was being referenced in a manner that can be apprehended by this court on appeal, this undermines the ability of both Ms. Wentworth and the Turners to establish error by the trial court. Because the parties have failed to ensure that the meaning of nonverbal testimony as to the locations on the exhibits was reflected in the record, the record is insufficient to demonstrate error by the trial court.

IV.

For the foregoing reasons, we affirm the judgment of the Chancery Court for Fentress County. Costs of the appeal area taxed equally between the appellant, Angela Wentworth, and the appellees, Robert and Jackie Turner, for which execution may issue if necessary.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE

- 14 -